UNITED STATES DISTRICT COURT
THE EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

J.K. PETROLEUM INC.

                   Plaintiff,                  **COMPLAINT**

    - against -

GULF OIL LIMITED PARTNERSHIP,         Docket No.:

                   Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

      Plaintiff J.K. Petroleum Inc. ("JKP"), by its attorneys Harriton & Furrer, LLP, as and for its Complaint herein, alleges as follows:

### Jurisdiction

    1.     This Court has jurisdiction pursuant to 28 U.S.C. §1331 as a federal question arises under the Petroleum Marketing Practice Act, 15 U.S.C. §2801 et seq. ("PMPA"), as well as other claims arising under the Constitution and laws and statutes of the United States.

    2.     This Court also has jurisdiction pursuant to 15 U.S.C. §2805(a).

    3.     This Court also has jurisdiction pursuant to 28 U.S.C. §1332 because there is complete diversity among the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

    4.     This Court has ancillary/supplemental jurisdiction over JKP's state law claims.

    5.     Venue is proper in this District pursuant to 28 U.S.C. §1391(a), (b) and (c) because a substantial part of the events giving rise to the claims occurred in this District.

    6.     The controversies in this case are justiciable, capable of disposition and JKP has a personal stake in the outcome.

1

## Parties

7.      JKP is a New York corporation with its principal place of business located at 98 Jewett Avenue, Staten Island, New York.  It is authorized to do and doing business in the State of New York.

8.      Upon information and belief, Gulf Oil Limited Partnership ("Gulf") is a Delaware partnership with its principal place of business located at 80 William Street, Suite 400, Wellesley Hills, Massachusetts.  It is authorized to do and doing business in the State of New York.

## The Gravamen of the Action

9.      JKP is engaged in the marketing and distribution of petroleum products in the State of New York and certain other states.  Among its activities, JKP sells automotive gasoline and other related products to service station operators and leases service station properties that it either owns or rents to operators under service station lease agreements.

10.      Gulf is also engaged in the marketing and distribution of petroleum products in the State of New York and certain other states.  Among its activities, Gulf sells automotive gasoline and other related products to distributors such as JKP.

11.      JKP entered into a Gulf Branded Distributor Agreement ("Distributor Agreement") with Gulf on July 6, 2012.

12.      Pursuant to the Distributor Agreement, JKP agreed to purchase Gulf-branded petroleum purchased from Gulf to distribute for resale through certain service station outlets owned and/or operated by JKP or by JKP's independent operators, dealers and re-sellers under the Gulf trademark.

13.      JKP entered into a Gulf Branded License Agreement ("License Agreement") with Gulf, which was effective November 1, 2013.

2

14.     Pursuant to the License Agreement, Gulf granted to JKP a non-exclusive license to distribute petroleum for resale through certain other service station outlets owned and/or operated by JKP or by JKP's independent operators, dealers and re-sellers under the Gulf trademark.

15.     Effective January 13, 2017, JKP and Gulf entered into a Revised Exhibit A to the License Agreement.

16.     Effective February 7, 2018, JKP and Gulf entered into a revised Exhibit A to the Distributor Agreement.

17.     On September 4, 2018, Gulf sent JKP several Demands for Immediate and Complete Debranding of the stations located at: (1) 2276 Westchester Avenue, Bronx, New York 10462; (2) 4220 Bronx Boulevard, Bronx, New York 10466; (3) 1998 Atlantic Avenue, Brooklyn, New York 11233; (4) 126-06 15th Avenue, College Point, New York 11356; (5) 1139 Cooper Street, Edgewater Park, New Jersey 08010; (6) 608 Spring Street, Elizabeth, New Jersey 07201; (7) 55 South Route 9 West, W. Haverstraw, New York 10993; (8) 106 West Main Street, Maple Shade, New Jersey 08052; (9) 2 W. Stamford Boulevard, Mt. Vernon, New York 10550; (10) 3970 North Delsea, Newfield, New Jersey 08360; (11) 111-02 Van Wyck Expressway, S. Ozone Park, New York 11420; and (12) 292 Ashburton Avenue, Yonkers, New York 10701.  All of the September 4, 2018 Demands are referred to herein as the "Debranding Notices."

18.     Each of the Debranding Notices state that, "because your Branded Distributor Agreement with Gulf was terminated with respect to the above Station, you have no right to continue to display the Gulf Trademarks there."

19.     The Debranding Notices gave JKP thirty (30) calendar days to de-brand the respective stations.

20.     Subsequently, on September 13, 2018, Gulf sent two (2) notices to JKP purporting to terminate the License and Distributor Agreements.  One was entitled Notice of Franchise Termination – Failure to Use Gulf's Credit Card Network and Demand for Payment and the other was entitled Notice of Franchise Termination – Failure to Misbranding and Purchase Minimum Volume Requirement and Demand for Payment.

21.     The Notice of Franchise Termination – Failure to Use Gulf's Credit Card Network and Demand for Payment ("September 2018 License Agreement Termination Notice") sought to terminate the License Agreement.

22.     The Notice of Franchise Termination – Failure to Misbranding and Purchase Minimum Volume Requirement and Demand for Payment ("September 2018 Distributor Agreement Termination Notice") sought to terminate the Distributor Agreement.

23.     Both of the September 2018 License and Distributor Agreement Termination Notices sought to terminate the respective agreements on Friday, December 21, 2018 at noon.

24.     Subsequently, Gulf withdrew the September 2018 License and Distributor Agreement Termination Notices.

25.     On December 13, 2018, Gulf sent two (2) new notices to JKP purporting to terminate the License and Distributor Agreements.  One was entitled Notice of Franchise Termination – Failure to Use Gulf's Credit Card Network and Demand for Payment and the other was entitled Notice of Franchise Termination – Failure to Misbranding and Purchase Minimum Volume Requirement and Demand for Payment.

26.     The Notice of Franchise Termination – Failure to Use Gulf's Credit Card Network and Demand for Payment ("December 2018 License Agreement Termination Notice") sought to terminate the License Agreement.

HARRITON & FURRER, LLP
ATTORNEYS AND COUNSELORS AT LAW

27.     The Notice of Franchise Termination – Failure to Misbranding and Purchase Minimum Volume Requirement and Demand for Payment ("December 2018 Distributor Agreement Termination Notice") sought to terminate the Distributor Agreement.

28.     Both of the December 2018 License and Distributor Agreement Termination Notices sought to terminate the respective agreements on Wednesday, March 13, 2019 at noon.

29.     Both of the December 2018 License and Distributor Agreement Termination Notices are ineffective pursuant to the PMPA and the agreements themselves.

### Relevant PMPA Provisions

30.     15 U.S.C. §2802(a)(1) provides that, "Except as provided in subsection (b) and section 2803 of this title, no franchisor engaged in the sale, consignment, or distribution of motor fuel in commerce may…terminate any franchise (entered into or renewed on or after June 19, 1978) prior to the conclusion of the term, or the expiration date, stated in the franchise…"

31.     15 U.S.C. §2802(b)(1) states that, "Any franchisor may terminate any franchise (entered into or renewed on or after June 19, 1978)…if…(A) the notification requirements of section 2804 of this title are met; and (B) such termination is based upon a ground described in paragraph (2)..."

32.     15 U.S.C. §2804(a) provides that, "Prior to termination of any franchise…, the franchisor shall furnish notification of such termination or such nonrenewal to the franchisee who is a party to such franchise or such franchise relationship… (1) in the manner described in subsection (c); and (2) except as provided in subsection (b), not less than 90 days prior to the date on which such termination or nonrenewal takes effect."

33.     Pursuant to 15 U.S.C. §2804(c), notification: "(1) shall be in writing; (2) shall be posted by certified mail or personally delivered to the franchisee; and (3) shall contain…(A) a

5

statement of intention to terminate the franchise or not to renew the franchise relationship, together with the reasons therefor; (B) the date on which such termination or nonrenewal takes effect; and (C) the summary statement prepared under subsection (d)."

34.    15 U.S.C. §2402(b)(2)(A)(i) states that, "For purposes of this subsection, the following are grounds for termination of a franchise or nonrenewal of a franchise relationship…[a] failure by the franchisee to comply with any provision of the franchise, which provision is both reasonable and of material significance to the franchise relationship, if the franchisor first acquired actual or constructive knowledge of such failure…not more than 120 days prior to the date on which notification of termination or nonrenewal is given, if notification is given pursuant to section 2804(a) of this title…"

35.    15 U.S.C. §2402(b)(2)(C)(i) states that, "For purposes of this subsection, the following are grounds for termination of a franchise or nonrenewal of a franchise relationship…[t]he occurrence of an event which is relevant to the franchise relationship and as a result of which termination of the franchise or nonrenewal of the franchise relationship is reasonable, if such event occurs during the period the franchise is in effect and the franchisor first acquired actual or constructive knowledge of such occurrence…not more than 120 days prior to the date on which notification of termination or nonrenewal is given, if notification is given pursuant to section 2804(a) of this title…"

## **COUNT I**

### **Violations of the PMPA – Distributor Agreement**

36.    Plaintiff repeats and realleges Paragraphs 1 to 35 as if fully recited herein.

37.    The Distributor Agreement is subject to the provisions of the PMPA.

6

38.     Gulf violated 15 U.S.C. §§2802 and 2804 for terminating the Distributor Agreement without the existence of any grounds set forth in §2802 and without meeting the notice requirements of §2804.

39.     The December 2018 Distributor Agreement Termination Notice states that, "The termination of our franchise relationship is occurring for the following individual and distinct reasons:

> "1)     Distributor has misbranded or mislabeled or otherwise violated Gulf's agreement to license its trademark to Distributor (15 U.S.C. Sec. 2802(b)(2)(C) and (c)(10)); and

> "2)     Distributor has failed to comply with provisions of the Distributor Agreement and related agreements, the provisions of which are both reasonable and of material significance to the franchise relationship (15 U.S.C. Sec. 2802(b)(2)(A)) specifically:

> "That portion of the Distributor Agreement wherein Distributor agreed it would:

> "have purchased, exclusively from Gulf, a minimum of 18,600,000 gallons of gasoline (and diesel fuel, if applicable) annually and 1,550,000 gallons of gasoline (and diesel fuel, if applicable) monthly as a Gulf branded distributor (the 'Contractual Minimum Volumes'). [As reduced, with Gulf's consent, through Exhibit A to the Distributor Agreement dated February 7, 2018.]"

40.     The grounds for termination contained in the December 2018 Distributor Agreement Termination Notice are false and pre-textual.

41.     In the December 2018 Distributor Agreement Termination Notice, Gulf claims that JKP stopped purchasing petroleum from Gulf in April 2018 but, nevertheless, continued to operate the stations, open to the motoring public, and falsely passed off the stations as Gulf stations.

HARRITON & FURRER, LLP
ATTORNEYS AND COUNSELORS AT LAW

42.     In the December 2018 Distributor Agreement Termination Notice, Gulf claims that JKP also allegedly failed to meet the minimum monthly purchase requirements in January 2018 and purchased no gasoline from Gulf during February and March 2018.

43.     Nevertheless, Gulf representatives had previously made it clear to JKP that Gulf had no intention of enforcing the minimum purchase requirements and, as a result, waived any right to enforce those provisions.

44.     The Distributor Agreement Termination Notice was sent on December 13, 2018, despite Gulf having more than 120 days of actual and constructive knowledge of JKP's alleged purchase failures and trademark violations and, as a result, JKP's alleged failure to purchase product and violations of Gulf's trademark rights cannot be relied upon as   grounds for termination of the Distributor Agreement.

45.     The December 2018 Distributor Agreement Termination Notice states that, "Gulf understands that the stations are are [sic] still operating, open to the motoring public, and falsely passing off the station off [sic] as a distributor of Gulf branded motor fuels."

46.     Gulf does not identify the station or stations purportedly in violation of the Distributor Agreement and, instead, it indicates in one part that Gulf is referring to a single station while in another part implies that there are multiple stations.

47.     As a result of the foregoing, the December 2018 Distributor Agreement Termination Notice fails to sufficiently provide notice as to the grounds for the termination of the Distributor Agreement.

48.     Gulf is seeking to terminate the Distributor Agreement for reasons other than those permitted under the PMPA and without complying with the notice requirements contained therein.

HARRITON & FURRER, LLP
ATTORNEYS AND COUNSELORS AT LAW

49.     JKP has complied with the material terms of the Distributor Agreement and remains willing and able to continue to do so.

50.     JKP has suffered and will suffer actual damages as a result of Gulf's violations of the PMPA in an amount to be determined at trial but not less than $2,000,000.00.

51.     JKP has suffered and will suffer irreparable harm unless Gulf is enjoined from terminating the Distributor Agreement.

52.     JKP has no adequate remedy at law.

53.     The balance of harms favors JKP.

## COUNT II

### Violations of the PMPA – License Agreement

54.     Plaintiff repeats and realleges Paragraphs 1 to 53 as if fully recited herein.

55.     The License Agreement is subject to the provisions of the PMPA.

56.     Gulf violated 15 U.S.C. §§2802 and 2804 for terminating the License Agreement without the existence of any grounds set forth in §2802 and without meeting the notice requirements of §2804.

57.     The December 2018 License Agreement Termination Notice states that, "The termination of our franchise relationship is occurring for the following individual and distinct reasons:

> "1)     Licensee has failed to comply with, and continues to fail to comply with, provisions of the Credit Card Agreement portion of the License Agreement, the provisions of which are both reasonable and of material significance to the franchise relationship (15 U.S.C. Sec. 2802(b)(2)(A)) specifically:
>
> "That portion of the Credit Card Agreement wherein Licensee agreed that:

HARRITON & FURRER, LLP
ATTORNEYS AND COUNSELORS AT LAW

"All credit card invoices accepted by [Licensee] are to be processed on Gulf approved POS Equipment utilizing the electronic point of sale system [Section 2 of the Credit Card Agreement]; and

"[License would] utilize only the Gulf credit card network and only Gulf approved credit card POS equipment to process credit cards transactions [Section 5 of the Credit Card Agreement]; and

"Each of [Licensee's] dealers shall use only the Gulf credit card network and only Gulf authorized credit card POS Equipment to process credit card transactions at Gulf branded locations."  (Underlying in original).

58.    The grounds for termination contained in the December 2018 License Agreement Termination Notice are false and pre-textual.

59.    The December 2018 License Agreement Termination Notice provides that, "Despite repeated attempts by Gulf to compel compliance by Licensee and in direct violation of Sections 2 and 5 of the Credit Card Agreement portion of the License Agreement, Licensee (and its retail dealers) have failed to utilize only the Gulf credit card network to process all credit card transactions on Gulf approved POS Equipment at all of their Gulf branded stations…."

60.    The provision that Gulf cites as the basis for the termination of the License Agreement, 15 U.S.C. §2802(b)(2)(A), only permits termination where the franchisee fails to comply with a provision of franchise, which provision is both reasonable and of material significance.

61.    The License Credit Card Agreement was not part of the License Agreement nor was it incorporated or made a part thereof.

62.    The License Credit Card Agreement is not referenced in the License Agreement.

10

HARRITON & FURRER, LLP
ATTORNEYS AND COUNSELORS AT LAW

63.     The only exhibits that are referenced in the License Agreement are Exhibits A (List of Stations, Minimum Contract Volumes, and License Fees), Exhibit B (General Terms and Conditions for Sales of Petroleum Products), Exhibit C (Termination and Nonrenewal) and Exhibit D (Insurance Requirements).

64.     Section 14 of the License Agreement provides that, "Licensee and Sublicensee shall honor and participate in any credit card or other payment system programs sponsored by Gulf in accordance with the terms and conditions of those programs;" however, nowhere in the License Agreement does it require JKP to participate in such program to the exclusion of other programs or that JKP was only permitted to accept Gulf credit cards.

65.     Additionally, nowhere in the License Agreement does it indicate that JKP or its dealer's failure to abide by the terms of the credit card program would constitute grounds for termination of the License Agreement.

66.     Section 14 only provides that, if JKP did not abide by such terms, it would "not be eligible for participation in the credit card or other payment program."

67.     The License Credit Card Agreement itself also does not indicate that a breach would result in termination of the License Agreement.

68.     While the Credit Card License Agreement states that, if the License Agreement is terminated or non-renewed for any reason, Gulf would have the right to terminate the License Credit Card Agreement (Section 13), the License Credit Card Agreement does not permit Gulf to terminate the License Agreement as a result of a breach of the License Credit Card Agreement.

69.     The License Credit Card Agreement states only that, "Significant penalties will be applied if it is determined that Licensee is not using the Gulf credit card network or

11

authorized POS Equipment exclusively for all credit card transactions." <u>See</u> Section 5.

70.     Gulf representatives repeatedly made it clear to JKP that Gulf had no intention of enforcing the terms of the License Credit Card Agreement and, as a result, waived any right to enforce those provisions.

71.     Gulf was aware of JKP's alleged violations of the License Credit Card Agreement for more 120 days before the License Agreement Termination Notice was sent and, as such, JKP's alleged violations thereof cannot be relied upon as grounds for termination of the License Agreement.

72.     As a result of the foregoing, the December 2018 License Agreement Termination Notice fails to sufficiently provide notice as to the grounds for the termination of the License Agreement.

73.     Gulf is seeking to terminate the License Agreement for reasons other than those permitted under the PMPA and without complying with the notice requirements contained therein.

74.     JKP has complied with the material terms of the License Agreement and remains willing and able to continue to do so.

75.     JKP has suffered and will suffer actual damages as a result of Gulf's violations of the PMPA in an amount to be determined at trial but not less than $2,000,000.00.

76.     JKP has suffered and will suffer irreparable harm unless Gulf is enjoined from terminating the License Agreement.

77.     JKP has no adequate remedy at law.

78.     The balance of harms favors JKP.

## COUNT III

### Breach of Contract – Distributor Agreement

79.     Plaintiff repeats and realleges Paragraphs 1 to 78 as if fully recited herein.

80.     Section 21 of the Distributor Agreement states that, "Gulf may terminate or nonrenew this Agreement and/or its relationship with distributor in accordance with **Exhibit D**, which is incorporated by reference and made a part hereof." (Emphasis in original).

81.     Exhibit D of the Distributor Agreement provides that, "Your supplier may terminate your franchise if you do not comply with a reasonable and important requirement of the franchise relationship…" See Exhibit D, Section I(A).

82.     Exhibit D also states that the supplier may terminate the franchise agreement for other reasons including for the "intentional adulteration, mislabeling or misbranding of motor fuels or other trademark violations." See Exhibit D, Section I(E)(10).

83.     However, Exhibit D clearly states that, "[i]n order to terminate for non-compliance with the franchise agreement, your supplier must have learned of this non-compliance recently." See Exhibit D, Section I(A).

84.     Under the terms of the License Agreement, in order to terminate a franchise agreement based upon an alleged failure to comply with the franchise agreement or occurrence of an event that is relevant to the franchise agreement, the supplier must terminate within 120 days of when it first acquired actual or constructive knowledge of the triggering event where at least 90-days' notice of termination is provided. See Exhibit D, Section (I)(A) and (E).

85.     The December 2018 Distributor Agreement Termination Notice states that, "The termination of our franchise relationship is occurring for the following individual and distinct reasons:

"1)    Distributor has misbranded or mislabeled or otherwise violated Gulf's agreement to license its trademark to Distributor (15 U.S.C. Sec. 2802(b)(2)(C) and (c)(10)); and

"2)    Distributor has failed to comply with provisions of the Distributor Agreement and related agreements, the provisions of which are both reasonable and of material significance to the franchise relationship (15 U.S.C. Sec. 2802(b)(2)(A)) specifically:

"That portion of the Distributor Agreement wherein Distributor agreed it would:

"have purchased, exclusively from Gulf, a minimum of 18,600,000 gallons of gasoline (and diesel fuel, if applicable) annually and 1,550,000 gallons of gasoline (and diesel fuel, if applicable) monthly as a Gulf branded distributor (the 'Contractual Minimum Volumes'). [As reduced, with Gulf's consent, through Exhibit A to the Distributor Agreement dated February 7, 2018.]"

86.    The grounds for termination contained in the December 2018 Distributor Agreement Termination Notice are false and pre-textual.

87.    In the December 2018 Distributor Agreement Termination Notice, Gulf claims that JKP stopped purchasing petroleum from Gulf in April 2018 but, nevertheless, continued to operate the stations, open to the motoring public, and falsely passed off the stations as Gulf stations.

88.    In the December 2018 Distributor Agreement Termination Notice, Gulf claims that JKP also allegedly failed to meet the minimum monthly purchase requirements in January 2018 and purchased no gasoline from Gulf during February and March 2018.

89.    Gulf representatives previously made it clear to JKP that Gulf had no intention of enforcing the minimum purchase requirements and, as a result, waived any right to enforce those provisions.

90.    The Distributor Agreement Termination Notice was sent on December 13,

2018, despite Gulf having more than 120 days of actual and constructive knowledge of JKP's alleged purchase failures and trademark violations and, as a result, JKP's alleged failure to purchase product and violations of Gulf's trademark rights  cannot be relied upon as grounds for termination of the Distributor Agreement.

91.     The Distributor Agreement Termination Notice states that, "Gulf understands that the stations are are [sic] still operating, open to the motoring public, and falsely passing off the station off  [sic] as a distributor of Gulf branded motor fuels."

92.     Gulf does not identify the station or stations purportedly in violation of the Distributor Agreement and, instead, it indicates in one part that Gulf is referring to a single station while in another part implies that there are multiple stations.

93.     As a result of the foregoing, the December 2018 Distributor Agreement Termination Notice fails to sufficiently provide notice as to the grounds for the termination of the Distributor Agreement.

94.     Gulf is seeking to terminate the Distributor Agreement for reasons other than those permitted under the License Agreement and without complying with the notice requirements contained therein.

95.     JKP has complied with the material terms of the Distributor Agreement and remains willing and able to continue to do so.

96.     JKP has suffered and will suffer actual damages as a result of Gulf's breaches of the License Agreement in an amount to be determined at trial but not less than $2,000,000.00.

97.     JKP has suffered and will suffer irreparable harm unless Gulf is enjoined from terminating the Distributor Agreement.

15

98.   JKP has no adequate remedy at law.

99.   The balance of harms favors JKP.

## COUNT IV

### Breach of Contract – License Agreement

100.   Plaintiff repeats and realleges Paragraphs 1 to 99 as if fully recited herein.

101.   The December 2018 License Agreement Termination Notice states that, "The termination of our franchise relationship is occurring for the following individual and distinct reasons:

> "1)   Licensee has failed to comply with, and continues to fail to comply with, provisions of the Credit Card Agreement portion of the License Agreement, the provisions of which are both reasonable and of material significance to the franchise relationship (15 U.S.C. Sec. 2802(b)(2)(A)) specifically:

> "That portion of the Credit Card Agreement wherein Licensee agreed that:

> "All credit card invoices accepted by [Licensee] are to be processed on Gulf approved POS Equipment utilizing the electronic point of sale system [Section 2 of the Credit Card Agreement]; and

> "[License would] utilize only the Gulf credit card network and only Gulf approved credit card POS equipment to process credit cards transactions [Section 5 of the Credit Card Agreement]; and

> "Each of [Licensee's] dealers shall use only the Gulf credit card network and only Gulf authorized credit card POS Equipment to process credit card transactions at Gulf branded locations."

102.   The grounds for termination contained in the License Agreement Termination Notice are false and pre-textual.

103.   The December 2018 License Agreement Termination Notice provides that, "Despite repeated attempts by Gulf to compel compliance by Licensee and in direct violation of Sections 2 and 5 of the Credit Card Agreement portion of the License Agreement, Licensee

16

(and its retail dealers) have failed to utilize only the Gulf credit card network to process all credit card transactions on Gulf approved POS Equipment at all of their Gulf branded stations…."

104. The License Credit Card Agreement was not part of the License Agreement nor was it incorporated or made a part thereof.

105. The License Credit Card Agreement is not referenced in the License Agreement.

106. The only exhibits that are referenced in the License Agreement are Exhibits A (List of Stations, Minimum Contract Volumes, and License Fees), Exhibit B (General Terms and Conditions for Sales of Petroleum Products), Exhibit C (Termination and Nonrenewal) and Exhibit D (Insurance Requirements).

107. Section 14 of the License Agreement provides that, "Licensee and Sublicensee shall honor and participate in any credit card or other payment system programs sponsored by Gulf in accordance with the terms and conditions of those programs;" however, nowhere in the License Agreement does it require JKP to participate in such program to the exclusion of other programs or that JKP was only permitted to accept Gulf credit cards.

108. Additionally, nowhere in the License Agreement does it indicate that JKP or its dealer's failure to abide by the terms of the credit card program would constitute grounds for termination of the License Agreement.

109. Section 14 only provides that, if JKP did not abide by such terms, it would "not be eligible for participation in the credit card or other payment program."

110. The License Credit Card Agreement itself also does not indicate that a breach would result in termination of the License Agreement.

HARRITON & FURRER, LLP
ATTORNEYS AND COUNSELORS AT LAW

111.    While the Credit Card License Agreement states that, if the License Agreement is terminated or non-renewed for any reason, Gulf would have the right to terminate the License Credit Card Agreement (Section 13), the License Credit Card Agreement does not permit Gulf to terminate the License Agreement as a result of a breach of the License Credit Card Agreement.

112.    The License Credit Card Agreement states only that, "Significant penalties will be applied if it is determined that Licensee is not using the Gulf credit card network or authorized POS Equipment exclusively for all credit card transactions." See Section 5.

113.    Gulf representatives made it clear to JKP that Gulf had no intention of enforcing the terms of the License Credit Card Agreement and, as a result, waived any right to enforce those provisions.

114.    Gulf was aware of JKP's alleged violations of the License Credit Card Agreement for more 120 days before the December 2018 License Agreement Termination Notice was sent and, as such, JKP's alleged violations thereof cannot be relied upon as grounds for termination of the License Agreement.

115.    As a result of the foregoing, the December 2018 License Agreement Termination Notice fails to sufficiently provide notice as to the grounds for the termination of the License Agreement.

116.    Gulf is seeking to terminate the License Agreement for reasons other than those permitted under the License Agreement and without complying with the notice requirements contained therein.

117.    JKP has complied with the material terms of the License Agreement and remains willing and able to continue to do so.

18

118.     JKP has suffered and will suffer actual damages as a result of Gulf's violations of the License Agreement in an amount to be determined at trial but not less than $2,000,000.00.

119.     JKP has suffered and will suffer irreparable harm unless Gulf is enjoined from terminating the License Agreement.

120.     JKP has no adequate remedy at law.

121.     The balance of harms favors JKP.

## COUNT V

### Massachusetts General Laws Chapter 93A

122.     Plaintiff repeats and realleges Paragraphs 1 to 121 as if fully recited herein.

123.     The actions of Gulf, as described herein, constitute unfair and deceptive trade practices within the meaning of Massachusetts General Laws Chapter 93A.

124.     Gulf's conduct was willful and knowing.

125.     JKP has suffered and will suffer actual damages as a result of Gulf's violations of Massachusetts General Laws Chapter 93A in an amount to be determined at trial but not less than $2,000,000.00.

126.     JKP has suffered and will suffer irreparable harm unless Gulf is enjoined from terminating the License Agreement.

127.     JKP has no adequate remedy at law.

128.     The balance of harms favors JKP.

## COUNT VI

### Declaratory Judgment – Distributor Agreement

129.     Plaintiff repeats and realleges Paragraphs 1 to 128 as if fully recited herein.

HARRITON & FURRER, LLP
ATTORNEYS AND COUNSELORS AT LAW

130.    As a result of all of the foregoing, Gulf improperly terminated the Distributor Agreement in violation of §§2802 and 2804 of the PMPA.

131.    Gulf is seeking to terminate the Distributor Agreement for reasons other than those permitted under the PMPA and without complying with the notice requirements contained therein.

132.    JKP has complied with the material terms of the Distributor Agreement and remains willing and able to continue to do so.

133.    JKP has suffered and will suffer irreparable harm unless Gulf is enjoined from terminating the Distributor Agreement.

134.    JKP has no adequate remedy at law.

135.    The balance of harms favors JKP.

136.    Plaintiff is without any adequate remedy at law.

137.    Based upon the foregoing, Plaintiff is entitled to an Order declaring the unlawfulness of the termination the Distributor Agreement.

## **COUNT VII**

### **Declaratory Judgment – License Agreement**

138.    Plaintiff repeats and realleges Paragraphs 1 to 137 as if fully recited herein.

139.    As a result of all of the foregoing, Gulf improperly terminated the License Agreement in violation of §§2802 and 2804 of the PMPA.

140.    Gulf is seeking to terminate the License Agreement for reasons other than those permitted under the PMPA and without complying with the notice requirements contained therein.

141.    JKP has complied with the material terms of the License Agreement and

20

remains willing and able to continue to do so.

142.    JKP has suffered and will suffer irreparable harm unless Gulf is enjoined from terminating the License Agreement.

143.    JKP has no adequate remedy at law.

144.    The balance of harms favors JKP.

145.    Plaintiff is without any adequate remedy at law.

146.    Based upon the foregoing, Plaintiff is entitled to an Order declaring the unlawfulness of the termination the License Agreement.

## COUNT VIII

### Preliminary and Permanent Injunction – Distributor Agreement

147.    Plaintiff repeats and realleges Paragraphs 1 to 146 as if fully recited herein.

148.    As a result of all of the foregoing, Gulf improperly terminated the Distributor Agreement in violation of §§2802 and 2804 of the PMPA.

149.    Gulf is seeking to terminate the Distributor Agreement for reasons other than those permitted under the PMPA and without complying with the notice requirements contained therein.

150.    JKP has complied with the material terms of the Distributor Agreement and remains willing and able to continue to do so.

151.    JKP has suffered and will suffer irreparable harm unless Gulf is enjoined from terminating the Distributor Agreement.

152.    JKP has no adequate remedy at law.

153.    The balance of harms favors JKP.

154.    Plaintiff is without any adequate remedy at law.

21

155.    Based upon the foregoing, Plaintiff is entitled to a preliminary and permanent injunction enjoining Gulf from enforcing the termination the Distributor Agreement.

## COUNT IX

### Preliminary and Permanent Injunction – License Agreement

156.    Plaintiff repeats and realleges Paragraphs 1 to 155 as if fully recited herein.

157.    As a result of all of the foregoing, Gulf improperly terminated the License Agreement in violation of §§2802 and 2804 of the PMPA.

158.    Gulf is seeking to terminate the License Agreement for reasons other than those permitted under the PMPA and without complying with the notice requirements contained therein.

159.    JKP has complied with the material terms of the License Agreement and remains willing and able to continue to do so.

160.    JKP has suffered and will suffer irreparable harm unless Gulf is enjoined from terminating the License Agreement.

161.    JKP has no adequate remedy at law.

162.    The balance of harms favors JKP.

163.    Plaintiff is without any adequate remedy at law.

164.    Based upon the foregoing, Plaintiff is entitled to a preliminary and permanent injunction enjoining Gulf from enforcing the termination the License Agreement.

## JURY DEMAND

165.    Plaintiff hereby demands a trial by jury.

## RELIEF SOUGHT

**WHEREFORE**, Plaintiff prays this Honorable Court for judgment as follows:

22

HARRITON & FURRER, LLP
ATTORNEYS AND COUNSELORS AT LAW

a.      Finding that the December 2018 Distributor Agreement Termination Notice violates the PMPA and declaring that the termination of the Distributor Agreement was improper;

b.      Finding that the December 2018 License Agreement Termination Notice violates the PMPA and declaring that the termination of the License Agreement was improper;

c.      Finding that the December 2018 Distributor Agreement Termination Notice violates the Distributor Agreement and declaring that the termination of the Distributor Agreement was improper;

d.      Finding that the December 2018 License Agreement Termination Notices violates the License Agreement and declaring that the termination of the License Agreement was improper;

e.      Temporarily and permanently enjoining Gulf from taking any steps to enforce the December 2018 Distributor Agreement Termination Notice;

f.      Temporarily and permanently enjoining Gulf from taking any steps to enforce the December 2018 License Agreement Termination Notice;

g.      Awarding monetary damages to JKP for Gulf's violations of the PMPA;

h.      Awarding monetary damages to JKP for Gulf's breaches of contract;

i.      Awarding monetary damages to JKP for Gulf;s violation of Massachusetts General Laws Chapter 93A;

j.      Awarding JKP its legal expenses, costs and reasonable attorneys' and expert fees incurred in this action; and

HARRITON & FURRER, LLP
ATTORNEYS AND COUNSELORS AT LAW

k.    Granting such other and further relief as it deems appropriate under the circumstances.

Dated:  Armonk, New York
        March 11, 2019

Yours, etc.

/s/ Urs Broderick Furrer
**URS BRODERICK FURRER, ESQ.**
**KIMBERLY A. SANFORD, ESQ.**
**HARRITON & FURRER, LLP**
Attorneys for Plaintiff J.K. Petroleum Inc.
84 Business Park Drive, Suite 302
Armonk, New York 10504
(914) 730-3400
UBFurrer@hflawllp.com
KASanford@hflawllp.com

24